**UNITED STATES of America**

v.

**Bernard FOSTER, Appellant.**

No. 83–1792.

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc Dec. 5, 1985.

Decided Feb. 14, 1986.

J. Peter Byrne, Washington, D.C., (appointed by this court) for appellant.

Michael W. Farrell, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Washington, D.C., was on brief, for appellee. Paul L. Knight, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

James Klein and Mark S. Carlin, Attys., District of Columbia Public Defender Service, Washington, D.C., were on brief for amicus curiae urging continued application of the existing rule.

Before ROBINSON, Chief Judge, and WRIGHT, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA, STARR and SILBERMAN, Circuit Judges.

SCALIA, Circuit Judge.

This is an appeal from conviction, after jury trial, on charges of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1982), and possessing a firearm not identified by serial number in violation of 26 U.S.C. §§ 5842, 5861(i). The firearm in question was a short-barreled shotgun found by the Metropolitan Police Department at the Argyle Variety Store in Northwest Washington, on a shelf beneath the counter at which the defendant was working. The principal basis of appeal is that there was inadequate evidence to establish the "knowing dominion and control," *United States v. Whitfield*, 629 F.2d 136, 143 (D.C.Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981), necessary for constructive possession of an illegal firearm, *see United States v. Lewis*, 701 F.2d 972, 973 (D.C.Cir.1983). Highly relevant to this point is evidence introduced by the defendant, after the District Court's denial of his motion for acquittal at the conclusion of the government's case, that the defendant was not merely an occasional worker behind the counter, but was the manager of the store.

It has been the law of this circuit, first announced by dictum in *Cephus v. United States*, 324 F.2d 893, 895–97 (D.C.Cir.1963), that objection to denial of a motion for judgment of acquittal made at the close of the government's case-in-chief is not waived by the defendant's proceeding with the presentation of his evidence, so that the validity of an ensuing conviction must be judged on the basis of the government's initial evidence alone. *See, e.g., United States v. Lewis*, 701 F.2d at 973. Because this circuit is apparently the only federal jurisdiction to hold that view, and because in the present case the subsequently introduced evidence was of potentially determinative importance, on the motion of the panel hearing the case the court agreed to decide *en banc* the following issues:

(1) Should this Circuit abandon the so-called "nonwaiver" rule announced in *Cephus v. United States*, ...?

(2) If so, should such change be effected prospectively?

The full court has had the benefit of briefing and oral argument by the parties, and of briefing by the District of Columbia Public Defender Service as an invited *amicus*.

I

Although the nonwaiver rule was first applied as a holding by this court in *Austin v. United States*, 382 F.2d 129, 138 & n. 20 (D.C.Cir.1967), the opinion in that case relied upon *Cephus*, which remains the only reasoned justification for the rule contained in our opinions. *Cephus* frankly acknowledged that the rule was contrary to federal authority:

> [M]ost jurisdictions, including Federal circuits, have consistently followed the waiver rule; and the Supreme Court, in a case from the Ninth Circuit, has provided at least a dictum supporting it.

324 F.2d at 896 (footnotes omitted). The Supreme Court case alluded to was *United States v. Calderon*, 348 U.S. 160, 164 & n. 1, 75 S.Ct. 186, 188 & n. 1, 99 L.Ed. 202 (1954)—and though it was assuredly "at least a dictum" it was more likely a holding. Not only did the Court describe the waiver rule as law, but it specifically relied on the defendant's testimony, offered after his motion to acquit was denied, in finding sufficient evidence of the crime of income tax evasion. *Id.* at 167, 75 S.Ct. at 189.

The *Cephus* court felt, however, that the waiver rule had been "imported from civil into criminal trials without considering the demands of our accusatorial system of criminal justice." 324 F.2d at 896–97 (footnote omitted). Although quoting from a New Jersey case to the effect that the waiver rule " 'comes perilously near compelling the accused to convict himself,' " *id.* at 896 (quoting *State v. Bacheller*, 89 N.J.L. 433, 436, 98 A. 829, 830 (N.J.1916)), *Cephus*'s analysis did not rest upon any constitutional imperative. Rather, at the heart of its reasoning was the notion that requiring the defendant to forgo presentation of his case if he wishes to preserve his

objection to denial of his motion to acquit is requiring him to "gamble on a prediction that the jury or appellate court will find [the government's] evidence insufficient," 324 F.2d at 896—suggesting that under such compulsion there is no genuine waiver in the sense of a known and voluntary relinquishment of rights. Moreover, the court noted that what might have been viewed as the technical justification for finding waiver (*viz.*, that the defendant had no categorical right to a ruling upon his motion of acquittal until he had rested his case) had been eliminated by Rule 29(a) of the Federal Rules of Criminal Procedure, 324 F.2d at 896–97. To the extent that *Cephus* rests on this rejection of a fictional "waiver," the foundation of its reasoning has been eroded by our recent *en banc* decision in *United States v. Byers,* 740 F.2d 1104 (D.C.Cir.1984), dealing with the similar assertion that a criminal defendant's so-called "waiver" of his fifth amendment right by introducing psychiatric testimony (making him subject to compulsory examination by a government psychiatrist) is not a "genuine" waiver:

> The eminent courts that put [the "waiver" theory] forth intended [it], we think, not as [an] explanation[ ] of the genuine reason for their result, but as [a] device[ ]—no more fictional than many others to be found—for weaving a result demanded on policy grounds unobtrusively into the fabric of the law.... [T]hey have denied the Fifth Amendment claim primarily because of the unreasonable and debilitating effect it would have upon society's conduct of a fair inquiry into the defendant's culpability.

*Id.* at 1113. So also with the "waiver" here; it is a conventional fiction used to describe and produce the result that the courts will not blind themselves to incriminating evidence introduced by the defendant who chooses to respond, rather than to demur, to the government's case. As the Fifth Circuit has put it:

> The doctrine's operative principle is not so much that the defendant offering testimony "waives" his earlier motion but that, if he presents the testimony of himself or of others and asks the jury to evaluate his credibility (and that of his witnesses) against the government's case, he cannot insulate himself from the risk that the evidence will be favorable to the government. Requiring the defendant to accept the consequences of his decision to challenge directly the government's case affirms the adversary process.

*United States v. Belt,* 574 F.2d 1234, 1236–37 (5th Cir.1978) (footnote omitted).

Of course underlying *Cephus*'s refusal to accept the fictional "waiver" was its policy judgment—similar to that urged by appellant and *amicus* here—that the result this convention produced was inadequate to "the demands of our accusatorial system of criminal justice." 324 F.2d at 897. Specifically, the *Cephus* court felt that the waiver rule "seriously limits the right of the accused to have the prosecution prove a prima facie case before he is put to his defense." *Id.* at 896 (footnote omitted). That policy justification has also been rendered questionable by subsequent litigation arising in this circuit. The Supreme Court's opinion last term in *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), decided in an analogous context that the government's initial failure to make out its case, and the trial judge's erroneous refusal to dismiss the prosecution at that stage, can be disregarded when the case continues and results in a conviction supported by adequate evidence. Specifically, *Richardson* held that if the trial judge refuses to enter a judgment of acquittal on motions made at the close of the government's case and again at the close of all the evidence, whereafter the jury fails to agree upon a verdict, the bar of double jeopardy does not prevent the defendant from being retried, and convicted on the basis of the evidence at the second trial, "[r]egardless of the sufficiency of the evidence at petitioner's first trial." *Id.* 104 S.Ct. at 3086. The policy judgment that *Richardson* and the well established waiver rule share is that a defendant demonstrated to be guilty beyond

a reasonable doubt on the basis of all the valid and admissible evidence will not be set free merely because, had an earlier erroneous ruling been made correctly, the trial would have ended before sufficient evidence to convict had been introduced. That balance between the procedural rights of the defendant and protection of society might have been struck differently; but the fact is that it has not been.

At the time *Cephus,* and later *Austin,* was decided, there was perhaps some reason to hope that the traditional rule we rejected would generally be displaced, and that the new rule we announced would find a broad acceptance. That hope has proved illusory. Although one treatise describes the waiver rule's status as "uncertain" in several circuits, 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 463 at 647 (2d ed. 1982), it is not clear that any other circuit has ever actually repudiated it. One circuit initially approved *Cephus,* in a case where it made no difference to the outcome since the government's case-in-chief provided sufficient evidence to sustain the conviction. *United States v. Rizzo,* 416 F.2d 734, 736 & n. 3 (7th Cir.1969). Another circuit cited *Cephus* with approval, but in the context of rejecting the quite different "waiver" doctrine that failure to renew a motion to acquit at the close of all the evidence may waive the right to challenge the sufficiency of *all* the evidence on appeal. *United States v. McIntyre,* 467 F.2d 274, 276 n. 1 (8th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 972, 35 L.Ed.2d 274 (1973); *see also United States v. Burton,* 472 F.2d 757, 763 (8th Cir.1973). In any event, both these circuits subsequently reaffirmed the waiver rule, *see United States v. Fearn,* 589 F.2d 1316, 1321 (7th Cir.1978); *United States v. Geelan,* 509 F.2d 737, 742 (8th Cir.1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 666 (1975). All eleven numbered circuits and the District of Columbia Court of Appeals are now on record, in decisions subsequent to *Cephus,* as adhering to the waiver rule [1]—as is the Supreme Court in post-*Cephus* dicta approving it, *see McGautha v. California,* 402 U.S. 183, 215–16, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), *vacated on other grounds,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972). The American Bar Association's Standards for Criminal Justice adhere to the traditional rule, with commentary that specifically considers and rejects the *Cephus* position. STANDARDS FOR CRIMINAL JUSTICE § 15–3.5(a) commentary at 95–96 (1982). We have reconsidered, and think it appropriate to abandon, a position which, almost a quarter-century after its first expression in our opinions, continues to be federal law in this circuit alone.

■ Accordingly, we hold that a criminal defendant who, after denial of a motion for judgment of acquittal at the close of the government's case-in-chief, proceeds with the presentation of his own case, waives his objection to the denial. The motion can of course be renewed later in the trial, but appellate review of denial of the later motion would take into account all evidence introduced to that point. We emphasize that our holding only applies to the factual context addressed by the dictum of *Cephus,* the holding of *Austin,* and presented by the case before us. Specifically, we do not now decide the related question whether there has been a waiver of objection when the defendant proceeds with his evidence after the trial judge, in violation of Rule 29(a) of the Federal Rules of Criminal

---

1. *See Colella v. United States,* 360 F.2d 792, 802 (1st Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 65, 17 L.Ed.2d 65 (1966); *United States v. Keuylian,* 602 F.2d 1033, 1040–41 (2d Cir.1979); *United States v. Trotter,* 529 F.2d 806, 809 n. 3 (3d Cir.1976); *United States v. Heller,* 527 F.2d 1173 (4th Cir.1975); *United States v. Perry,* 638 F.2d 862, 870 (5th Cir.1981); *United States v. Black,* 525 F.2d 668, 669 (6th Cir.1975); *United States v. Roman,* 728 F.2d 846, 858 (7th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360. 80 L.Ed.2d 832 (1984); *United States v. Wetzel,* 514 F.2d 175, 177 (8th Cir.), *cert. denied,* 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975); *United States v. Martinez,* 514 F.2d 334, 337 (9th Cir.1975); *United States v. Boss,* 671 F.2d 396, 401 (10th Cir. 1982); *United States v. Contreras,* 667 F.2d 976, 980 (11th Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982); *Hairston v. United States,* 497 A.2d 1097, 1104 n. 12 (D.C. 1985).

Procedure, refuses to rule upon his acquittal motion in the face of a "clear demand" by defendant, thereby depriving him of the opportunity of testing the government's case. *See, e.g., United States v. Rhodes,* 631 F.2d 43, 44–45 (5th Cir.1980); *United States v. House,* 551 F.2d 756, 759–60 (8th Cir.), *cert. denied,* 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977). Nor do we overrule the precise holding of the *Cephus* opinion itself—which, after delivering its influential dictum criticizing the waiver rule in the present context, simply refused to extend the rule to the situation where, after the defendant moving for acquittal declined to proceed with his own case, inculpatory evidence was introduced by one of his co-defendants. 324 F.2d at 897. *See also, e.g., United States v. Lopez,* 576 F.2d 840, 843 (10th Cir.1978); *United States v. Belt,* 574 F.2d at 1236. Finally, we do not address the question whether, after proceeding with his defense following denial of his mid-trial motion for acquittal, the defendant must renew that motion at the close of all the evidence in order to preserve for appeal (and not "waive") his objection to the sufficiency of all the evidence. *See, e.g., United States v. Kilcullen,* 546 F.2d 435, 441 (1st Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977) (citing cases); *United States v. Perez,* 526 F.2d 859, 863–64 (5th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *but see Cephus,* 324 F.2d at 895 n. 7 (dictum). We note in passing that in order to spare their clients at least the necessity of litigating this last point, defense counsel, now that preservation of their objection to denial of the mid-trial motion is no longer assured, would be well advised to renew the motion at the conclusion of their case.

## II

■ We need discuss the second issue only briefly. We find that it was reasonable—indeed, the only responsible course— for counsel for defendant to proceed on the assumption that he had nothing to lose in the trial below by proceeding with the defendant's evidence. That was the clear law of this circuit, repeated as recently as 1983. *United States v. Lewis,* 701 F.2d at 973. While it may be true that in light of the great weight of contrary authority there was reason to suspect that we (or the Supreme Court) might change the circuit law, it would certainly not have been prudent for counsel to withhold the defendant's evidence on the slim chance that that would occur in this very case. Thus, unlike the rule of criminal procedure whose overruling was announced and applied in *United States v. Sheppard,* 569 F.2d 114, 117 (D.C. Cir.1977) (holding that corroboration of the complainant's testimony would no longer be required for conviction of sexual offenses), the rule here is likely to have induced reliance which substantially affected conduct of the defense. To change the ground rules after the trial would not merely deprive the defendant of a benefit he thought he had, but would retroactively convert a thoroughly sensible trial tactic into a disastrous one.

Whether or not, as appellant suggests, applying our new rule to the present case would violate the due process clause, *cf. Marks v. United States,* 430 U.S. 188, 191– 92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977); *United States v. Henson,* 486 F.2d 1292, 1305–08 (D.C.Cir.1973) (en banc), we are persuaded that it would not be desirable. We note that the United States does not oppose application of the rule prospectively only. Accordingly, we will continue to follow *Austin* in the present case and in other cases that came to trial before issuance of this opinion.

The remaining issues in this appeal, and its final disposition, are left to the panel, whose opinion is issued simultaneously with this *en banc* opinion.

*So ordered.*