**UNITED STATES of America,
Appellant,**

v.

**Wayne BYFIELD, Appellee.**

. **No. 90–3082.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 25, 1991.

Decided March 29, 1991.

Rehearing and Rehearing En Banc
Denied May 30, 1991.

Stevan E. Bunnell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Roy W. McLeese, III, Washington, D.C., Asst. U.S. Attys., were on the brief, for appellant.

Jensen E. Barber, Washington, D.C., for appellee.

Before MIKVA, Chief Judge, D. H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

After a jury found Wayne Byfield guilty on one count of possession with intent to distribute crack cocaine, the district court granted his motion for judgment of acquittal notwithstanding the verdict. *See* Memorandum Opinion (D.D.C. Feb. 16, 1990) (hereinafter "Mem. Op."). The trial judge concluded that there was insufficient evidence, as a matter of law, to prove that the defendant had constructively possessed the cocaine found in a tote bag carried by a young girl apparently travelling with him. Because the district court applied the incorrect standard for judging a motion for acquittal brought after the verdict, and therefore failed to consider all of the evidence supporting a jury verdict based on constructive possession, we reverse.

## I. BACKGROUND

On August 18, 1989, Wayne Byfield and a young girl took Amtrak's "Night Owl" train from New York to Washington, D.C. Thomas Maher, an Amtrak detective, testified that Byfield and the young girl sat together and talked quietly during the trip. Maher followed them off the train and into Union Station. He testified that they looked "very nervous." Byfield had no luggage, but the young girl carried a tote bag. They stood next to each other and talked as they rode an escalator from the train platform. Byfield then moved ahead of the girl in the station, but she approached him again and had a brief conversation while they walked "very swiftly." Byfield went ahead, looking back at the girl and pushing downward with both hands, evidently motioning her to stay back away from him. Maher observed Byfield repeat these furtive hand gestures at least two more times.

Detective Maher alerted two Metropolitan Police Department ("MPD") detectives on duty at Union Station. Maher and Detective Zattau approached the girl, who was approximately 20–30 feet behind Byfield at this time. Zattau described her as "very hesitant and very nervous" when they talked with her, and testified that "[s]he would look in front of her and ... up ahead of her towards Mr. Byfield." When asked if she had a ticket, the girl apparently pointed to Byfield. During a consensual search of her tote bag, the detectives found a shoe box for Etonics Transam trainers (size 8–½ men's, white and light grey) containing an old pair of New Balance shoes and six plastic bags holding

over 600 grams of crack cocaine. The tote bag also contained men's clothing (all size extra-large), but no women's clothing.

William Buss, the other MPD detective, approached Byfield outside the station near the taxicab waiting area. When questioned, Byfield said that he lived in New York and was planning to stay in Washington, D.C. for a couple of days. Byfield added that he had travelled alone and carried no luggage because he had clothing at the place he was going to visit. Byfield consented to a pat-down search and left after Buss found nothing on him. About 15 minutes later, Detective Maher saw Byfield sitting on a wall across the street and proceeded to arrest him. Byfield was wearing a "muscle shirt" (like those found in the tote bag), shorts, and new Etonic running shoes matching the model, size and color of those identified on the shoe box found in the tote bag. (Byfield insists that the government never tried to definitively link the shoes he was wearing with the shoe box in the tote bag.)

Wayne Byfield was charged, *inter alia,* with one count of possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii). At a jury trial commencing on December 6, 1989, the government presented testimony from the detectives involved in the case, along with expert testimony to the effect that it is "a very common practice" for adults to use young people as drug couriers because of the lesser penalties faced by juveniles. At the conclusion of the government's case, Byfield moved for a judgment of acquittal. The district court denied this motion.

The defense then presented several witnesses in an attempt to support its theory that appellee knew nothing about the drugs in the tote bag. Shawn Chambers testified that Byfield had spent part of the previous day in New York City with a friend known only as "Larry," at the home of Rhonda Williams. Ms. Williams had a couple of girls with her, one of whom (called "Shirley") was identified as the girl who accompanied Byfield on the train. Chambers testified that he saw Larry talk to Shirley and

that he saw saw Byfield talk with Rhonda Williams (though not with Shirley). Byfield's brother testified that he saw Larry inside the family's home late that night, "looking for something" in Byfield's closet a few hours before the train left. Byfield's brother and girlfriend both testified that they did not recognize the men's clothing found in the tote bag. After the defense rested, the district court again rejected Byfield's motion for acquittal, and the jury thereupon found Byfield guilty. However, the district court then issued an order and opinion granting Byfield's motion for acquittal notwithstanding the verdict.

In granting Byfield's motion, the district court expressly stated that it would look only to "the evidence presented as part of the government's case-in-chief." Mem. Op. at 16 (citing *United States v. Pardo,* 636 F.2d 535, 547 (D.C.Cir.1980)). Noting that proof of constructive possession requires some action or conduct that "links the individual to the narcotics and indicates that he had a stake in them, some power over them," Mem. Op. at 17, the court ruled that "none of the officers testified as to *any* gesture, action, or word demonstrating that Byfield owned, possessed, or had an ability to control the tote bag or its contents." *Id.* at 21. The court dismissed the fact that the Etonics shoes worn by Byfield at the time of arrest matched the shoe box in which the narcotics were found ("at best" this created "a possible connection" between Byfield and the girl, according to the trial judge), and also noted that Byfield was "fully cooperative" with the police and "did not act in any manner consistent with knowledge of guilt." *Id.* at 22.

## II. ANALYSIS

■ A judgment of acquittal notwithstanding the verdict is appropriate "only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt." *United States v. Hernandez,* 780 F.2d 113, 120 (D.C.Cir.1986). The evidence must be viewed "in the light most favorable to the Government." *United States v. Singleton,* 702 F.2d 1159, 1163 (D.C.Cir.1983). Although a motion for

judgment of acquittal made at the close of the government's case-in-chief is decided on the basis of only that evidence so far introduced at trial, *see Pardo*, 636 F.2d at 547, this court recently revised the law of the circuit to hold that a court must look at the entire record when ruling on the same motion made after trial. *See United States v. Foster*, 783 F.2d 1082, 1085 (D.C.Cir.1986) (en banc) ("[A]ppellate review of denial of the later motion would take into account all evidence introduced to that point."). In *Foster* we overruled *Austin v. United States*, 382 F.2d 129, 138 & n. 20 (D.C.Cir. 1967), bringing this court into accord with all the other circuit courts. On review, "we do not defer to the district court, because we must make our own independent judgment regarding the sufficiency of evidence." *United States v. Singleton*, 702 F.2d 1182, 1183 (D.C.Cir.1983) (per curiam) (en banc). The government contends that the district court erred by failing to apply the standard announced in *Foster* for review of post-trial motions for acquittal and that a proper review of the record would disclose evidence from which a reasonable jury could find guilt beyond a reasonable doubt.

The district court's statement that it could only look at the evidence presented as part of the government's case-in-chief is incorrect in light of this court's *en banc* decision in *Foster*. Appellee argues that the district court did not mean what it said, pointing to other statements in the opinion suggesting the judge "meticulously" reviewed the entire record. But the district court did not in fact consider evidence from the defendant's case that buttressed the government's constructive possession theory. Indeed, the trial judge's recitation of the facts alludes solely to the government's case-in-chief. *See* Mem. Op. at 2–5. We are disturbed by the government's apparent failure to apprise the district court of the different standard set out in *Foster* for post-trial motions for acquittal, especially in light of the district court's proper reliance on the *Pardo* standard in addressing the first motion for judgment of acquittal at trial. However, the law of this circuit requires reference to the entire record in these instances, and our review of the evidence presented by both sides convinces us that a reasonable jury could find Mr. Byfield guilty of constructive possession.

■ Constructive possession requires that the defendant knew of, and was in a position to exercise dominion and control over, the contraband, "either personally *or through others.*" *United States v. Raper*, 676 F.2d 841, 847 (D.C.Cir.1982) (emphasis added) (adding that the elements of possession may be inferred from circumstantial evidence); *accord United States v. Joseph*, 892 F.2d 118, 125 (D.C.Cir.1989) (and cases cited therein). The essential question is whether there is "some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them." *Pardo*, 636 F.2d at 549. Mere proximity to the drugs or association with others possessing drugs will not suffice. *See id.*

■ Byfield claims that the evidence in this case showed nothing other than a casual encounter between himself and a female drug courier, distinguishing other constructive possession decisions and arguing that the government's case depended upon impermissible inferences from the evidence. Although other decisions finding constructive possession can be distinguished, *see* Mem. Op. at 18–21 & n. 19, their verbal formulations of the standard would appear to cover this case. For instance, appellee emphasizes the differences between this case and the court's recent decision in *Joseph*, 892 F.2d at 125. What he fails to recognize, however, is that the court there found evidence that the defendant personally exercised dominion or control over the bag carried by his brother; the court did not say that those facts set the minimum required to show the more attenuated degree of control "through others" involved here.

As to the evidence itself, the government points to several items in the record that would allow a reasonable jury to find guilt beyond a reasonable doubt. One of the crucial links in their chain of proof is evi-

dence that Byfield and the young girl were travelling together. Although this fact is not undisputed, there is ample evidence from which a jury could infer that they were in fact travelling together, including evidence presented by the defense about Byfield's meeting with Rhonda Williams and Larry's conversation with the girl prior to their departure. In defense counsel's opening statement, Byfield's attorney argued that Byfield was planning to travel with Larry and the girl, but that Larry backed out at the last moment. This is consistent with the behavior observed by the detectives on the train and in the station. There is also evidence that Byfield exercised some control over the girl as they walked through the station, especially by signalling her to stay behind him. Although such conduct may not be as strong as prior cases where the defendant had exercised control over the drugs themselves, it suffices to prove control over the person carrying the drugs. *Cf. United States v. Garcia*, 866 F.2d 147, 152 (6th Cir.1989) (defendant's hand signals to drug courier in airline terminal coupled with association between defendant and courier provided "more than enough" evidence to convict under aiding and abetting theory). Here, we do not have a case where the defendant merely sat beside or was acquainted with a person carrying contraband.

The government also points to the shoes, which it contends strongly tied Byfield to the tote bag and the cocaine. They add that other circumstantial evidence also linked Byfield to the contents of the tote bag (e.g., the men's clothing generally consistent with his size). Finally, the government points to expert testimony describing the *modus operandi* of using juveniles as couriers. All of this circumstantial evidence removes any potential doubts raised by the direct evidence concerning a controlling connection between Byfield and the girl. As defense counsel points out, however, Byfield's general cooperativeness distinguishes this from previous constructive possession cases where there was clearer evasion of the police, but that alone would not make constructive possession unavail-able on these facts. Although hardly conclusive, the evidence introduced by both the government and the defense in this case would allow a reasonable jury to convict the defendant on a theory of constructive possession.

### III. Conclusion

Because the district court failed to consider evidence presented by the defense which buttressed the government's constructive possession theory and provided an adequate basis for the jury's guilty verdict, its decision to grant Byfield's JNOV motion is reversed and the case is remanded with instructions to enter judgment on the verdict.

*It is so ordered.*