**UNITED STATES of America,**

v.

**Don A. JOHNSON, Appellant.**

**No. 91–3031.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1991.

Decided Jan. 10, 1992.

---

5. Sedgwick pleaded guilty to his role in the offense.

Alan G. Warner, Washington, D.C. (appointed by this court), for appellant.

Kristan Peters–Hamlin, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Thomas C. Black, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS and BUCKLEY, Circuit Judges, and S. JAY PLAGER,* Circuit Judge, U.S. Court of Appeals for the Federal Circuit.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Don A. Johnson appeals his convictions for possession with intent to distribute five or more grams of cocaine base and for using or carrying a firearm in connection with a drug trafficking crime. Johnson and a co-defendant, Tony White, were tried before a jury. At the close of the government's case-in-chief, Johnson moved for a judgment of acquittal, which was denied. Thereafter, in presenting his own defense, White testified that Johnson owned the cocaine and the firearm and that he had used White's apartment for the distribution of the cocaine.

Johnson claims that the trial court erred in denying his motion for acquittal. In reviewing the court's action, we may not consider a co-defendant's subsequent testimony. *See Cephus v. United States,* 324 F.2d 893 (D.C.Cir.1963). We find that without White's incriminating statements there was insufficient evidence against Johnson to support a conviction. Accordingly, we reverse.

## I. BACKGROUND

On the evening of June 20, 1990, several officers of the D.C. Metropolitan Police Department arrived at co-defendant White's apartment with a search warrant. The police entered through the open front door and noticed the appellant, Johnson, in the hallway of the apartment. The police searched Johnson and seized $127 in cash; they found no drugs or firearms on him.

The police found White on the living room sofa in a half-dazed state, with a device for smoking crack cocaine on the floor beside him. They found a .25–caliber

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

handgun in plain view on the table in the living room; beside the gun was a note pad that contained information on drug transactions. Also on the table was a piece of cardboard under which the police found a small pile of crack cocaine and a razor blade. The officers found more crack cocaine stored in a closet in the apartment.

The police arrested both Johnson and White, and each was indicted for possession with intent to distribute five or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and for using or carrying a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c). (White was also charged with maintaining his premises for the purpose of storing or distributing cocaine base in violation of 21 U.S.C. § 856. He was convicted only on this last charge and has not appealed.)

At the trial, the government presented an expert witness, Officer David Stroud of the D.C. Metropolitan Police Department's Narcotics Task Force, whom the court qualified to give an opinion on the methods of cocaine distribution in the District of Columbia. The government presented Officer Stroud with a hypothetical set of facts resembling the conditions in White's apartment at the time of the arrest. Stroud testified that these facts indicated that the crack cocaine was intended for distribution rather than for personal use. Stroud also stated that it was unlikely that a drug dealer would allow an outsider not involved in his drug operation to come close to his gun and drugs.

At the close of the government's evidence, Johnson moved for a judgment of acquittal, which the trial court denied. Both Johnson and White then informed the court that they intended to take the stand. Johnson planned to call two additional witnesses: Officer Stroud and a character witness.

Co-defendant White testified first and admitted that he allowed Johnson to use his apartment in exchange for cocaine; White otherwise denied all involvement with the drug operation. White stated that both the cocaine and the handgun belonged to John-son. In short, White accused Johnson of distributing crack cocaine from his apartment.

After White rested his case, Johnson presented his defense. He first called Officer Stroud and questioned him on the absence of fingerprint analysis in the police investigation. Johnson then took the stand and attempted to rebut White's testimony, claiming that his presence in White's apartment had been completely innocent. He stated that he had come to White's apartment looking for another person and that he did not know White before the night of the arrest. Finally, Johnson presented a character witness. At the close of all the evidence, Johnson renewed his request for judgment of acquittal, which was again denied. The jury convicted Johnson on both counts.

## II. DISCUSSION

■ The standard of appellate review of a denial of a motion for judgment of acquittal is the same as that employed by the trial judge in passing on the motion. *See Burks v. United States,* 437 U.S. 1, 16–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978). We must therefore determine whether,

> viewing the evidence in the light most favorable to the Government, ... and recognizing that it is the jury's province to determine credibility and to weigh the evidence, a reasonable jury *must necessarily* entertain a reasonable doubt on the evidence presented.

*United States v. Singleton,* 702 F.2d 1159, 1163 (D.C.Cir.1982) (panel decision) (emphasis in original). In making that determination, "we do not defer to the district court, because we must make our own independent judgment regarding the sufficiency of evidence." *United States v. Singleton,* 702 F.2d 1182, 1183 (D.C.Cir.1983) (*en banc*).

■ Our review of the evidence raises two issues. First, we must determine what evidence may be considered in reviewing the denial of Johnson's motion for acquittal. Second, we must decide whether that

evidence is sufficient to support the jury verdict against Johnson.

Turning to the first issue, it is clear that we may examine all of the government's evidence. We must decide, however, whether to consider evidence presented after Johnson's initial motion for judgment of acquittal. Although the evidence offered by Johnson added nothing to the government's case, White's testimony provided ample support for a jury verdict against Johnson. By alleging that Johnson was running a drug operation from his apartment, White provided the "information about the regularity with which the person in question occupied the place and about his special relationship with the ... renter." *United States v. Holland*, 445 F.2d 701, 703 (D.C.Cir.1971). Although White had an incentive to exculpate himself by inculpating Johnson, it was within the jury's province to credit White's testimony. It is crucial, then, to determine whether this court can consider the co-defendant's statements in reviewing the trial court's denial of Johnson's motion for judgment of acquittal.

This case is governed by our decisions in *United States v. Foster*, 783 F.2d 1082 (D.C.Cir.1986), and *Cephus v. United States*, 324 F.2d 893. In *Cephus*, as in the present case, we reviewed a joint trial in which the trial court denied the appellant's motion for acquittal at the close of the government's case-in-chief. Thereafter the co-defendant, testifying on his own behalf, tried to inculpate the appellant. Appellant put on witnesses to rebut his co-defendant's allegations. In doing so, he introduced evidence that buttressed the government's case, and he was convicted.

On appeal, appellant contended that the court had erred in denying his motion because the government's case-in-chief could not sustain a conviction. The government, however, asserted that we were required to consider all the evidence presented at the trial. *Cephus*, 324 F.2d at 895. In dictum, we criticized the majority rule in the federal circuits which provides that by introducing evidence of his own, a defendant waives his motion for acquittal at the close

of the government's case; we considered this practice contrary to "the demands of our accusatorial system of criminal justice." *Id.* at 897. Despite this criticism of the "waiver rule," we concluded that "we need not here question the entire waiver doctrine in criminal cases. We need only question its application based upon the defendant's response to damaging testimony of a co-defendant testifying on his own behalf." *Id.* at 897. We continued:

> It is clear that if the defendant himself rests on the Government's evidence, the co-defendant's testimony does not waive the defendant's motion. It is also clear that the defendant's own evidence, introduced in response to the co-defendant's testimony, does not waive the motion if it adds nothing to the Government's case. The waiver question arises only where, as here, the defendant himself, in seeking to explain, impeach, or rebut the co-defendant's testimony, introduces evidence which overshoots that mark and tends to cure a deficiency in the Government's case. We think the waiver doctrine cannot fairly be applied in this situation.

*Id.* (footnotes omitted). In subsequent cases, we went beyond the narrow holding in *Cephus* and adopted its nonwaiver dictum as the law of the circuit. *See, e.g., Austin v. United States*, 382 F.2d 129, 138 & n. 20 (D.C.Cir.1967) (applying the non-waiver rule in a trial involving a single defendant).

*Foster* marked this circuit's retreat from the non-waiver rule. That case involved a one-defendant trial, not a joint trial. After the court had denied his motion for a judgment of acquittal at the close of the government's case-in-chief, the defendant proceeded with his defense. This court, sitting *en banc*, ruled (prospectively) that by proceeding with his defense, a defendant waives his motion for acquittal based on the government's case-in-chief. *Foster*, 783 F.2d at 1085–86. We explained that the "motion can of course be renewed later in the trial, but appellate review of denial of the later motion would take into account all evidence introduced to that point." *Id.* at 1085.

In the instant case, the government focuses on this language in *Foster* to support the position that we should here consider all the evidence, including White's damaging testimony, in evaluating the trial court's ruling on Johnson's motion. A closer reading of *Foster*, however, requires a different result. *Foster* emphasized that

> our holding only applies to the factual context addressed by the dictum of *Cephus*, the holding of *Austin*, and presented by the case before us.... [We do not] overrule the precise holding of the *Cephus* opinion itself—which, after delivering its influential dictum criticizing the waiver rule in the present context, simply refused to extend the rule to the situation where, after the defendant moving for acquittal declined to proceed with his own case, inculpatory evidence was introduced by one of his co-defendants.

*Foster*, 783 F.2d at 1085–86.

Thus, *Cephus* survives *Foster*. In *Cephus*, we declined to apply the waiver doctrine when the defendant had intended to rest but found it necessary to present evidence in order to explain or rebut his co-defendant's incriminating statements. We explained that to hold otherwise would in effect enable the government

> to use the coercive power of the co-defendant's testimony as part of its case-in-chief, even though the Government was prohibited from calling the co-defendant to testify for the prosecution. Although this prohibition arises from the co-defendant's privilege against self-incrimination, its effect excludes from the Government's case-in-chief the testimony of one who has an incentive to exculpate himself by inculpating his fellow defendant.

324 F.2d at 898 (footnotes omitted). We therefore hold, in keeping with the rationale of *Cephus*, that a co-defendant's subsequent inculpatory testimony may not be considered in ruling upon a motion for a judgment of acquittal made after the close of the government's case-in-chief, even if the defendant might be found, under *Foster*, to have waived his motion. Accordingly, White's testimony may not be con-

sidered. As Johnson's testimony "adds nothing to the government's evidence," *see id.* at 895, we need not decide whether, in light of Johnson's decision to proceed with his own defense, his testimony would also be excludable under *Cephus*. Thus, we now proceed to determine whether the government's evidence, considered in the light most favorable to the government, could have supported a finding that Johnson was guilty as charged.

The government argues that it provided sufficient evidence in its case-in-chief to convict Johnson. The government relies upon Johnson's presence in an apartment that contained drugs and a gun, and on the $127 found on his person, which it claims "provided a logical link between [Johnson] and the drug distribution scheme." Brief for Appellee at 13. The government also asserts that Officer Stroud's expert testimony provided a reasonable interpretation of the circumstantial evidence in this case as consistent with a common pattern in which drug dealers use someone else's apartment for drug distribution.

Having carefully reviewed the evidence, we conclude that the government's case-in-chief was insufficient to enable a jury to find beyond a reasonable doubt that Johnson was engaged in the distribution of cocaine base or that he used a firearm in connection with drug trafficking. As Johnson did not have actual possession of either the drugs or the gun, the government had to establish constructive possession. This "requires that the defendant knew of, and was in a position to exercise dominion and control over, the contraband, either personally or through others." *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C.Cir.1991) (internal quotation marks and citations omitted; emphasis deleted).

We have held that constructive possession

> should not be lightly imputed to one found in another's apartment or home. If an inference of constructive possession must be made, the jury must have before it information about the regularity with which the person in question occupied

the place and about his special relationship with the owner or renter.

*Holland*, 445 F.2d at 703. The government's evidence failed to demonstrate any special relationship between Johnson and White that might have linked Johnson to the drugs and gun found in the latter's apartment. Nor was there any basis for imputing control over them to Johnson. *See Byfield*, 928 F.2d at 1166 ("Mere proximity to the drugs or association with others possessing drugs will not suffice" to show constructive possession); *see also United States v. Long*, 905 F.2d 1572, 1576 (D.C.Cir.1990) (no evidence of constructive possession of a firearm where sole evidence against defendant was that he was in co-defendant's apartment and was ten to fifteen feet away from the gun). Nor are we impressed by the government's argument that the $127 in cash found on Johnson's person was evidence of his involvement in drug trafficking. Possession of that sum, which represents less than a week's earnings at the minimum wage, is hardly incriminating.

### III. Conclusion

For the foregoing reasons, the district court's denial of Johnson's motion for judgment of acquittal at the close of the government's case-in-chief is reversed, and his convictions are set aside.

*So ordered.*