957 F.2d 912
 294 U.S.App.D.C. 163
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
William C. REDD, Appellant.
 No. 91-3043.
 United States Court of Appeals, District of Columbia Circuit.
 March 17, 1992.
 
 Before RUTH BADER GINSBURG, SILBERMAN and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 William C. Redd was charged with distribution of cocaine base, or "crack," 21 U.S.C. § 841(a), (b)(1)(C); possession with intent to distribute five grams or more of crack (PWID), 21 U.S.C. § 841(a), (b)(1)(B)(iii); and using or carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c). He was convicted on all counts. Redd challenges the sufficiency of the evidence to support his convictions on the PWID and firearms charges and argues that the trial court's instructions were flawed with respect to each of the three charges. We affirm the district court in all respects.
 
 I.
 
 5
 On May 3, 1990, officers of the United States Park Police and the Bureau of Alcohol, Tobacco and Firearms (BATF) executed a search warrant for a townhouse located at 2516 Sheridan Road, S.E., in Washington. Upon entering the townhouse, the officers saw appellant, William Redd, sitting on a bed in the first floor bedroom with a young woman and several small children. One step away from Redd, on top of a television set, was a loaded .25-caliber automatic pistol. Additional rounds of .25-caliber ammunition were found on the top of a small dresser, next to two rings that belonged to Redd, and in a pair of pants on the bedroom floor that contained other of Redd's personal belongings. Behind the television on which the loaded gun had been placed, the officers found eight small bags of 68% pure crack cocaine, weighing a total of approximately 1.6 grams. A search of the enclosed patio area at the rear of the house uncovered more crack. A large bag, containing 27 small bags of 57% pure crack, was hidden between two tires in a corner of the patio. The 27 bags on the patio were packaged in a similar manner to the bags found in the bedroom and weighed a total of approximately 6.3 grams.
 
 
 6
 At trial, a government drug expert testified that the amount of crack found in the 35 bags recovered from 2516 Sheridan Road, as well as the manner in which the crack was packaged, indicated that the drugs were intended for distribution. It was brought out later, during the defense case, that Redd's fiancee, Brenda Jackson, lived at the 2516 Sheridan Road townhouse and that Redd was at least a part-time resident there, staying "off and on" for a period of several years and receiving mail at that address. Special Agent John Chambers of BATF testified, moreover, that he had purchased crack from Redd at the townhouse the day before the raid. According to Agent Chambers, an informant had told him that crack was being sold from the rear of 2516 Sheridan Road, and when he went to the back of the house and asked for "Cool," the name the informant had given him, Redd came to the door and sold him crack. On another occasion, Agent Chambers was invited inside and observed Redd retrieve packets of what appeared to be crack from the first floor bedroom.
 
 
 7
 At the close of the government's case, Redd moved for a judgment of acquittal. The district court denied the motion. Redd then presented witnesses who testified that he was at work at the time Agent Chambers claimed to have purchased crack from him. Redd took the stand himself to deny that he had ever sold drugs to Agent Chambers. He further disclaimed any knowledge of the crack located either in the bedroom or on the patio. He said that he was holding the .25-caliber pistol found in the bedroom for a person named David, who, Redd said, sometimes dealt drugs. Redd's fiancee Jackson testified and implied that the crack found in the bedroom also belonged to David: she testified that when David brought the gun over for Redd to hold, she noticed David was holding a white plastic bottle like the one eventually recovered from behind the television. She also suggested that the crack found on the patio belonged to someone named Clyde, who, she said, had come looking for it after Redd's arrest.
 
 
 8
 At the close of the evidence, Redd moved once again for a judgment of acquittal, which was again denied. Following a jury verdict of guilty on all counts, Redd renewed his motion. At sentencing, the district judge denied the motion and gave Redd concurrent sentences of 70 months' imprisonment for the distribution and PWID counts and an additional 60 months' imprisonment for the firearm count.
 
 II.
 
 9
 Redd first challenges the district court's denial of his motion for acquittal on the PWID charge. He argues that there was insufficient evidence linking him with the drugs on the patio to establish constructive possession and that without the crack on the patio, he could not have possessed with intent to distribute five or more grams of the drug, as charged in the indictment. Viewing the evidence in the light most favorable to the government, see United States v. Davis, 562 F.2d 681, 683 (D.C.Cir.1977) (per curiam), we note that Redd used 2516 Sheridan Road as his primary residence, that he sold crack from the rear of the house, and that the packaging of the crack found on the patio was similar to the packaging of the crack found in the bedroom with Redd. This is plainly adequate to support a jury's finding beyond a reasonable doubt that Redd "knowingly had an ability to exercise dominion and control" over the drugs on the patio and that he had stashed them there with the intent to distribute them later. United States v. Evans, 888 F.2d 891, 895 (D.C.Cir.1989), cert. denied, 110 S.Ct. 1325 (1990). In any event, it is undisputed that there was sufficient evidence to establish that Redd possessed the 1.6 grams of crack found in the bedroom, and we have recently held that the quantity of the drug involved in a conviction under 21 U.S.C. § 841(a) is a sentencing issue, rather than a substantive element of the offense.[1] See United States v. Patrick, No. 90-3178, slip op. at 6 n. 5 (D.C.Cir. March 17, 1992).
 
 
 10
 Redd's second contention is that the district court erred when it denied his request for lesser-included offense instructions on simple possession with regard to the distribution and PWID counts. "[A] defendant is entitled to an instruction on a lesser included offense if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be." United States v. Thornton, 746 F.2d 39, 47 (D.C.Cir.1984) (quoting Belton v. United States, 382 F.2d 150, 155 (D.C.Cir.1967)). However, a trial court is not obliged to give a lesser-included offense instruction when it would be inconsistent with the defendant's theory of the case or when the jury could not rationally convict the defendant for the lesser offense without convicting for the greater; a lesser-included offense instruction is not appropriate when its use by the jury would require a highly improbable sequence of testimonial inferences. See United States v. Payne, 805 F.2d 1062, 1067 (D.C.Cir.1986) (per curiam).
 
 
 11
 Here the jury could not rationally have made use of a lesser-included offense instruction. Because Redd testified that he had no knowledge at all of either of the two stashes of drugs seized from 2516 Sheridan Road, his defense to the PWID charge was purely exculpatory. In order to convict him of simple possession without also finding that he intended to distribute the crack, the jury would have had to disbelieve both the government's witnesses and Redd himself. The jury would have had to concoct a theory of the case that no party ever presented to it. Similarly, as to the distribution count, neither side presented any evidence suggesting that Redd possessed crack but did not sell it; the only evidence bearing on the distribution charge was Agent Chambers' testimony that Redd had sold him drugs and Redd's flat denial of that statement. If the jury believed Redd guilty of anything based on this evidence, it could only have been distribution. Under such circumstances, the district court was not required to instruct the jury on simple possession.
 
 
 12
 Redd argues next that his conviction on the PWID charge must be reversed because the district court instructed the jury that he could be found guilty of the PWID count as an aider and abettor. See 18 U.S.C. § 2(a). Redd contends that the government did not advance this as a theory of its case, did not indict him as an aider and abettor, did not request the instruction, and introduced no evidence of the activities of any other individual whom he could be said to have aided and abetted.
 
 
 13
 Because Redd did not object to the use of this instruction at the time of trial, and indeed explicitly acquiesced in it, we review only for plain error. See FED.R.CRIM.P. 52(b). To be reversible as plain error, a trial defect must be particularly egregious, and it must affect the integrity of the trial so seriously as to result in a miscarriage of justice. See United States v. Young, 470 U.S. 1, 15 (1985); United States v. Madeoy, 912 F.2d 1486, 1493 (D.C.Cir.1990). Although tenuous, there was sufficient evidence in this case from which a reasonable jury might have concluded that Redd was aiding and abetting the drug operation of another principal. The defense case was replete with references to "David" and "Clyde," both of whom defense witnesses suggested were involved with drugs.[2] Indeed, Redd himself testified that David sold drugs and that he was helping David by holding a gun David wished to conceal from the Park Police.
 
 
 14
 Redd's final challenge is to the adequacy of the district court's jury instructions concerning Count III of the indictment, the firearm charge. 18 U.S.C. § 924(c) states in pertinent part: "Whoever, during and in relation to any ... drug trafficking crime ..., uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years." Redd argues that the district court was required to instruct the jury that it could not convict him of this offense without first having found him guilty of the underlying drug trafficking offense of PWID charged in Count II of the indictment. The district court declined to give this instruction, instead simply instructing the jury on the essential elements of the crime, which include carrying or using the firearm "during and in relation to a drug trafficking offense." The district court's instruction was entirely adequate and proper, especially given that the jury was in fact entitled to return inconsistent verdicts on the PWID and firearm charges. See United States v. Powell, 469 U.S. 57, 69 (1984); United States v. Laing, 889 F.2d 281, 288 (D.C.Cir.1989), cert. denied, 110 S.Ct. 1306 (1990). Furthermore, because the jury ultimately did find Redd guilty beyond a reasonable doubt of the PWID charge, the additional instruction Redd seeks could not have affected the outcome of his trial in the slightest. Redd's convictions are therefore affirmed.
 
 
 15
 It is so ordered.
 
 
 
 [1]
 Redd also challenges the sufficiency of the evidence on the firearm charge; however, he acknowledges that this challenge depends upon our reversing his conviction on the PWID charge. Because we affirm the PWID conviction, we do not address the sufficiency of the evidence with respect to the firearm offense
 
 
 [2]
 It is immaterial that the evidence concerning the putative principals of the drug operation was introduced as part of the defense case; we may consider all evidence introduced at trial in evaluating sufficiency questions. See United States v. Foster, 783 F.2d 1082, 1085 (D.C.Cir.1986) (en banc)