UNITED STATES of America

v.

Thomas E. DORSEY, Appellant.

No. 88–3002.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 8, 1988.

Decided Jan. 24, 1989.

As Amended Jan. 24, 1989.

Bruce Zagaris, Washington, D.C. (appointed by the court), for appellant.

Roberto Iraola, Asst. U.S. Atty., with whom Michael W. Farrell, Helen M. Bollwerk, Washington, D.C., and John P. Dominguez, Asst. U.S. Attys., were on the brief, for appellee.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and GIBSON,* Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Defendant-appellant Thomas E. Dorsey, tried in the district court along with two co-defendants, was convicted of unlawful manufacture of phencyclidine (PCP) (21 U.S.C. § 841(a)(1) (1982)) and of conspiracy to manufacture PCP (*id.* § 846). He received concurrent sentences: on the conspiracy count, fifteen to forty-five years; on the manufacturing count, forty-five years plus ten years of special supervision to commence upon his release from prison.

Among several errors alleged in this appeal, Dorsey claims that the trial court improperly coerced the jury and thereby denied him the right to an impartial verdict. He asserts the invalidity of the conspiracy

* Of the United States Court of Appeals for the Eighth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

conviction on the ground that the district judge erroneously admitted against him certain statements and acts of a co-defendant. We reject Dorsey's jury coercion claim for the reasons stated in this opinion. Under the doctrine announced in *United States v. Hooper*, 432 F.2d 604 (D.C.Cir. 1970), in view of the concurrency of the sentences, we vacate the conspiracy conviction without determining the merits of Dorsey's evidentiary objection. We affirm in all respects Dorsey's conviction for manufacturing PCP.

### I. Jury Coercion Claim

#### A. *Background*

In an indictment filed February 26, 1987, Dorsey and two co-defendants, Tyler Haynes and Thomas McDuffie, were each charged with conspiracy to manufacture PCP, 21 U.S.C. § 846, manufacture of more than 100 grams of PCP, *id.* § 841(a)(1), and possession with intent to distribute more than 100 grams of PCP, *id.* Trial before a jury commenced on October 13, 1987, and on November 5 at 11:50 a.m., the jury retired to its deliberations.

The next day, Friday, November 6 at 3:56 p.m., the jury notified the court that it had reached a verdict. Upon the jury's return to the courtroom, the foreman reported that the jury had found Haynes and Dorsey guilty, but McDuffie not guilty, on all three counts. On request of counsel for Haynes and Dorsey, the court directed the clerk to poll the jurors. The first three jurors affirmed the guilty verdicts, but the following colloquy occurred with Juror No. 4:

THE DEPUTY CLERK: Juror No. 4, is your verdict as to Thomas E. Dorsey guilty of Count 1, guilty of Count 2, guilty of Count 3, and as to the defendant Tyler Haynes guilty of Count 1, guilty of Count 2, and guilty of Count 3?

JUROR NO. 4: No.

THE DEPUTY CLERK: Your verdict is—

JUROR NO. 4: Guilty of conspiracy, not guilty on the 2 and 3.

The court immediately stopped the polling; after conferring with counsel at the bench, the judge denied mistrial motions by Haynes and Dorsey and instructed the jury:

Ladies and gentlemen of the jury, in polling the jury, it has become apparent that you may not yet have reached a unanimous verdict with respect to the defendants Haynes and Dorsey. For this reason, I am asking you to return to the juryroom for further consideration of your verdict. Whenever you have reached a unanimous verdict, you may return it in court. If you are not unanimous, then you should continue your deliberations.

After you return to the juryroom, any member is free to change his or her vote on any issue submitted to you. Each juror is free to change his or her vote until the jury is discharged.

Ladies and gentlemen of the jury, if you would return to the juryroom to continue your deliberations in this case.

Upon receiving this instruction, at 4:42 p.m., the jury retired to resume deliberations.

Approximately an hour and a half later, the court advised counsel that the jury, by note, had requested to be excused for the weekend if a decision had not been reached by 6:30 p.m. The court brought the jury back to the courtroom, and informed the jurors that they could break and resume on Monday; alternatively, they could stay to continue deliberations, in which event arrangements would be made so they could move their cars and have dinner. Minutes after the jurors retired to confer among themselves, the foreman sent two notes to the court. One announced that the jury wanted to return on Monday. The other was from Juror No. 4; it read:

My name is Karen L. Kelly, Juror No. 4. I would like to know if I could be exchanged with one of the alternates. Because I cannot make an impartial decision without becoming *emotionally involved.* I feel that the government did not have a strong case with the evidence that was presented. I would like to

please be excused because I do not want to be a part of the defendants livelyhood [sic] well being, (*Going to Prison*). Please try to understand how I feel and I cannot take the arguing with the other decisions of the other jurors. I feel that I would be lying to myself to change my verdict just to have an unanimous decision. Thank you. Karen Kelly, Juror No. 4.

(Emphasis in original.)

Defense counsel renewed their mistrial motions, with Dorsey's attorney insisting that the jury was "hopelessly hung." The court excused the jury until 10:00 a.m. Monday, November 9, and reserved decision on the motions. On the morning of the 9th, defense counsel, arguing in favor of a mistrial, urged that "to require the jurors to continue deliberation has an increasingly coercive effect on Juror No. 4, Ms. Kelly."

The district judge denied the mistrial motions and comprehensively explained his reasons for opting to ask the jury to continue deliberations. First, he observed:

[A]ny time there is a poll of a jury, and a jur[or] at some point indicates that the juror's vote is different than the vote announced by the panel, that juror is somehow singled out. And yet, as we know, that is not necessarily grounds for a mistrial in the case.

Second, he referred to his specific instruction that "any member is free to change his or her vote on any issue" up to the time the jury is discharged. He additionally mentioned the length of the trial, the day and a half of deliberations prior to the weekend break, and the time the jurors had just had "to step away from the case." Furthermore, he commented, one couldn't be sure all jurors save one had come to rest concerning the weight of the evidence on each count "because we did not complete the poll." All things considered, he concluded, "if the jurors continue their discussions, and they discuss whatever questions any of them may have, they may reach a verdict."

At that point, the judge invited proposals from counsel on a jury instruction. Both sides submitted suggestions. Eventually, all parties agreed on the following note, which was sent to the jury at 2:43 p.m.:

The jury is now deliberating its verdict and no juror can be exchanged at this point in the proceedings. Please continue your deliberations in this case.

At 5:18 p.m. the jury notified the court that a verdict had been reached. After the jury assembled in the courtroom, the foreman announced that Haynes and Dorsey had been found guilty on the conspiracy and manufacturing counts, and not guilty on the possession with intent to distribute count. A jury poll confirmed this verdict.

B. *Discussion*

■ We start with the basic precepts. "Any criminal defendant ... being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988). This court has elaborated: "Every defendant in a federal criminal case has the right to have his guilt found, if at all, only by the unanimous verdict of a jury of his peers. Any undue intrusion by the trial judge into this exclusive province of the jury is error of the first magnitude." *United States v. Thomas*, 449 F.2d 1177, 1181 (D.C.Cir.1971) (en banc) (footnote omitted).

Whether a trial court's statement to the jury should be regarded as coercing the surrender of views conscientiously held is an issue appellate judges should evaluate "in its context and under all the circumstances." *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed. 2d 957 (1965). Two types of trial court intervention have caused particular concern: the so-called *Allen* charge, and inquiry into the jury's numerical division for or against conviction.

The charge that received Supreme Court approbation close to a century ago in *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896), included the statement that "if much the larger number [of jurors] were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many

men, equally honest, equally intelligent with himself." The *Allen* charge has been questioned or resisted in recent decades. *See, e.g., United States v. Rey,* 811 F.2d 1453, 1458 (11th Cir.) ("modern judicial trend" disfavors *Allen* charge), *cert. denied,* ____ U.S. ____, 108 S.Ct. 103, 98 L.Ed.2d 63 (1987). In *Thomas,* 449 F.2d 1177, this court exercised its supervisory power over the administration of the law in this circuit to require trial judges to use in place of the problematic *Allen* charge, a milder form of supplemental instruction endorsed by the American Bar Association:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

> You are not partisans. You are judges —judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

*Id.* at 1184–86 & n. 46; Instruction 2.91, Alternative A, Young Lawyers Section, Bar Association of the District of Columbia, Criminal Jury Instructions, District of Columbia 107 (3d ed. 1978).

Inquiry into a stalled jury's numerical division on the merits of conviction is improper; the Supreme Court so declared in an exercise of its supervisory powers in *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). Such inquiries, the Court reasoned, are generally coercive and serve "no useful purpose that cannot be attained by questions not requir-

ing the jury to reveal the nature or extent of its division." *Id.* at 450, 47 S.Ct. at 135; *cf. Mullin v. United States,* 356 F.2d 368 (D.C.Cir.1966) (trial judge did not abuse his discretion when he granted mistrial following jury's unsolicited disclosure of 7–4–1 division in favor of conviction; hence second trial resulting in conviction did not violate double jeopardy clause of fifth amendment).

In its most recent expression in point, *Lowenfield v. Phelps,* 108 S.Ct. at 550–52, however, the Supreme Court held noncoercive, in the context of a capital sentencing proceeding, a supplemental charge of a modified *Allen* cast, coupled with an inquiry into the jury's numerical division on whether further deliberations might assist the jurors in returning a verdict.

Turning to Dorsey's case, we are satisfied that the record shows no improper coercion within the purview of governing precedent. First, the poll when the jury initially returned to report a verdict was prompted by the defendants themselves. *See United States v. Brooks,* 420 F.2d 1350, 1354 (D.C.Cir.1969) (despite tendency to isolate dissenting jurors, polling "has long been regarded as a 'useful' and necessary device for preserving the defendant's right to a unanimous verdict"). Second, the supplemental instructions after Juror No. 4 spoke were not of the *Allen* type. The trial judge's response was authorized by Federal Rule of Criminal Procedure 31(d) which provides:

> *Poll of Jury.* When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

The language used by the judge, furthermore, tracked almost exactly the instruction prescribed for aborted jury polls by Instruction 2.93, Criminal Jury Instructions, *supra* at 111.

Over the weekend pause in the jury's deliberations, the trial judge carefully re-

viewed our decision in *United States v. Brown*, 823 F.2d 591 (D.C.Cir.1987), and was dominantly guided by that opinion. He declined to discharge Ms. Kelly based on the poll,[1] for she had indicated uncertainty about the strength of the evidence. In *Brown*, we directed that a juror may not be discharged when the record reveals "a possibility that the juror believes that the government has failed to present sufficient evidence to support a conviction." *Id.* at 597. Instead, to safeguard the defendant's right to a unanimous verdict, we directed that "the judge must either declare a mistrial or send the jury back to deliberations with instructions that the jury continue to attempt to reach agreement." *Id.* at 596. The latter course is the one the trial judge took and, in the circumstances presented, it was surely within his discretion to do so.

It bears emphasis that the jury never reported itself deadlocked and that the initial deliberations had run not much more than one day following a multi-count trial proceeding against three defendants that had consumed close to four weeks. We underscore too that the court, with commendable attentiveness, framed a sensible and concise response, after consultation with counsel, to Juror Kelly's request to be excused. *See supra* p. 1277. That response contained no words of pressure. *Cf. Jenkins*, 380 U.S. at 446, 85 S.Ct. at 1060 (where jury indicated doubts on sufficiency of evidence, it was coercive for judge to instruct: "You have got to reach a decision in this case.").

We appreciate that jury deliberations can be difficult for individual jurors, as the deliberations in this case were for Juror Kelly. *Cf. United States v. O'Brien*, 609 F.2d 895, 896 (8th Cir.1979) (upholding trial judge's denial of mistrial where juror, in the midst of deliberations, asked to be removed stating in a note that his decision "would not be fair to the U.S. people or the defendant"), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980). We note, however, that individual jurors have no right to be released or relieved from their colleagues' efforts at persuasion. By permitting the jury here to continue deliberations the trial court stayed within reasonable limits and fulfilled its charge faithfully to the parties and to the larger community our system of justice serves. Dorsey's right to an impartial, unanimous verdict was not denied.

## II. ADMISSIBILITY OF CO-CONSPIRATOR'S STATEMENTS

Dorsey's indictment was the result of an undercover investigation by the Fairfax Police Department. At trial, Fairfax Police Investigator Thomas Polhemus provided eyewitness testimony on the manufacturing count. He recounted that, on December 30, 1986, he observed co-defendant Haynes and Dorsey performing the second stage of the PCP manufacturing process on crystals Polhemus had supplied. Investigator Polhemus also testified about conversations with Haynes prior to the December 30 manufacturing episode.

In particular, Polhemus reported his December 17 conversation with Haynes, in which Haynes said he wanted to do the manufacturing that night and "all he had to do was call his partner when [the partner] got out of school." Haynes did not identify this "partner," however, nor did he ever indicate that he had made the after-school call.

At trial, Dorsey maintained that the government had failed to establish the existence of a conspiracy at any time prior to December 30, 1986; he therefore objected to any use against him of Haynes's pre-December 30 statements. Such statements, Dorsey argued, did not qualify for the co-conspirator exception to the hearsay rule, Federal Rule of Evidence 801(d)(2)(E).

The government answered that the events of December 30 cast light on whether a conspiracy existed on December 17. On the morning of the 30th, as Investigator Polhemus testified, Haynes agreed to perform the manufacturing process and then

---

**1.** *See* FED.R.CRIM.P. 23(b) ("[I]f the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.").

said "he would call his partner, and everything that was needed would be there." Shortly thereafter, again as Polhemus testified, Haynes called Polhemus and said "he had, in fact, spoken to his partner, and everything was set to go."

Polhemus came to Haynes's apartment with one pound of PCC crystals (the product of the first stage of the PCP manufacturing process) on the afternoon of December 30. Haynes, using a speaker phone, called "Chin" and told him "to come on over right away." Chin arrived at the apartment some time later. Polhemus recognized Chin's voice from the speaker phone conversation. Haynes then proceeded to perform the final PCP manufacturing process with Chin's help. At trial, Polhemus identified Chin as Dorsey.

*Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the government urges, is precedent for reaching back from December 30 to associate Dorsey with a conspiracy to manufacture PCP existing on December 17. In *Bourjaily,* co-defendant Lonardo had agreed with an FBI informant to find individuals to distribute cocaine. Lonardo said, in a tape-recorded conversation with the informant, that he had a "gentleman friend" who had some questions. Later, the informant spoke by telephone to the "friend" about the drug's quality and price. The informant then arranged with Lonardo for the sale to take place in a designated parking lot where Lonardo would transfer the drug from the informant's car to the "friend." The transaction proceeded as planned; FBI agents arrested on the spot both Lonardo and "friend," who turned out to be Bourjaily. The Supreme Court held that Lonardo's out-of-court statements were properly admitted against Bourjaily.

This case does not precisely fit the *Bourjaily* frame. Government counsel had urged that Haynes's "partner" here corresponds to Lonardo's "friend" in *Bourjaily.*

But at oral argument the court pointed to an ambiguity. True, there were references to Haynes's "partner" in the December 17 Polhemus–Haynes conversation, and again in their conversation December 30. As the court said during argument in relation to the December 17 reference, however: "It could have been somebody else.... It could have been another partner." Government counsel acknowledged: "It may have, it may have been another partner." Further, as just indicated, *see supra* p. 1279, no evidence presented at trial suggested that Haynes communicated with Dorsey on or about December 17 concerning Haynes's plan to manufacture PCP with Polhemus.

Resolution of the issue here would thus require us to proceed beyond the place where controlling precedent leaves off. The question is "substantial," and "not without difficulty." In these circumstances, we believe it appropriate to follow the procedure established for our court in *United States v. Hooper,* 432 F.2d 604 (D.C.Cir.1970) (Leventhal, J.). That case too presented "a substantial question," a "point not without difficulty," one with "no controlling precedent directly in point." *Id.* at 605. The court concluded in *Hooper* that "there is no need for us to resolve [such an] issue on the merits," *id.* at 606, when the sentence on the count in question was to run concurrently with, and no longer than, the sentence on a conviction the court affirmed. Accordingly, the court vacated the conviction that presented the unresolved question.[2]

In sum, in this case, as in *Hooper:*

We see no reason to devote our time and energies to the research, and opinion-writing, incident to appropriate determination of an issue not governed by controlling precedent when no present public interest or need is furthered thereby. It better serves the general interest of the administration of justice if the court limits its resources to the determination of

---

2. We recognize that in *United States v. DeBright,* 730 F.2d 1255 (9th Cir.1984) (en banc), the Ninth Circuit rejected the *Hooper* procedure and required that the merits of all challenges to convictions be reviewed and resolved on appeal. *Hooper* remains the law of this circuit, however,

and so we apply it today. We also note that two other circuits have adopted the *Hooper* approach. *See United States v. Butera,* 677 F.2d 1376 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Cardona,* 650 F.2d 54 (5th Cir.1981).

those questions and cases that must be decided....

*Id.*[3] We therefore vacate the fifteen to forty-five years sentence on the conspiracy count while leaving in place the forty-five years plus ten years special supervision sentence on the manufacturing count.

CONCLUSION

We reject Dorsey's claim that the jury's guilty verdict was the product of coercion which denied him the right to an impartial jury. We vacate, under the procedure adopted by this circuit in *United States v. Hooper,* Dorsey's conviction for conspiracy to manufacture PCP; we do so without resolving the merits of Dorsey's challenge to the admission of certain co-conspirator statements.[4] We have carefully considered and rejected all arguments Dorsey advanced that are not specifically addressed here.[5] We thus affirm his conviction for manufacturing PCP.

It is so ordered.

---

3.  Were we to find Haynes's December 17 statements inadmissible against Dorsey, we would face further issues concerning the prejudice occasioned by this error: Was the error of constitutional magnitude? Was it "harmless"? *See generally* Note, Bourjaily v. United States: *A New Rule for Admitting Coconspirator Hearsay Statements Under Federal Rule of Evidence 801(d)(2)(E),* 1988 WIS.L.REV. 577; Stacy & Dayton, *Rethinking Harmless Constitutional Error,* 88 COLUM.L.REV. 79 (1988).

4.  We add the same proviso as in *Hooper:*

    The vacation of the judgment does not destroy the jury verdict, but is rather equivalent in practical effect to a suspension of the imposi-

tion of sentence. If it later develops that the interest of justice so requires, the sentence can be reimposed on a concurrent basis. The conviction could then be subject to appellate review.

432 F.2d at 606 n. 8.

5.  As to Dorsey's assertion that the district court erroneously denied his request for an entrapment instruction, we note his trial counsel's acknowledgement before that court:

    Mr. Haynes was not a government agent, and I don't think we can have entrapment vicariously through a co-defendant.

    Given that concession, we do not consider the point properly preserved for appeal.