984 F.2d 1255
 299 U.S.App.D.C. 417
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Dirul-Islam PASHA, a/k/a Darryl J. Bland, Appellant
and
Amin Hassan Muslim, a/k/a Kevin Ricardo Harrison, Appellant.
 Nos. 91-3156, 91-3157.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 26, 1993.
 
 Before R.B. GINSBURG, SILBERMAN and STEPHEN F. WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments of counsel. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum it is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the District Court be affirmed in full except for the District Court's imposition of sentence on Mr. Muslim for his D.C.Code violations described in Counts 8 and 9 of the superseding indictment filed in this case on August 2, 1989.
 
 
 3
 IT IS FURTHER ORDERED that Mr. Muslim's sentences for his violations of D.C.Code §§ 6-2311(a) and 6-2361(c) are vacated under the procedure established in United States v. Hooper, 432 F.2d 604, 606 & n. 8 (D.C.Cir.1970). See accompanying memorandum at 4.
 
 
 4
 The clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 5
 Appellants Dirul-Islam Pasha and Amin Hassan Muslim raise a variety of challenges to their March 25, 1991, convictions and sentences for conspiracy to distribute one kilogram or more of a substance containing heroin, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A)(i); distribution of heroin, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C); possession of an unregistered firearm and ammunition, in violation of D.C.Code §§ 6-2311(a) and 6-2361(c) (Muslim only); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Pasha only). With the exception of Muslim's challenge to the admissibility of a gun and ammunition seized from his car, all of appellants' claims are rejected. For reasons explained below, we resolve Muslim's challenge to the admissibility of the gun and ammunition under the circuit procedure established in United States v. Hooper, 432 F.2d 604 (D.C.Cir.1970), and accordingly vacate Muslim's convictions for violations of D.C.Code §§ 6-2331(a) and 6-2361(c). Because vacation of those convictions has no impact on Muslim's concurrent 168-month term of imprisonment imposed for federal narcotics violations, Muslim's overall sentence is unchanged and we do not reach the merits of his claim.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 The most difficult claim is Muslim's argument that the trial court erred in admitting a gun and ammunition recovered in an inventory search following the warrantless seizure of his car. The government asserts and the trial court held that this seizure was authorized by 21 U.S.C. § 881(b)(4).[1] Appellant primarily argues that § 881(b)(4) does not permit a warrantless search in the absence of exigent circumstances. The point is open in this circuit, see United States v. Fafowora, 865 F.2d 360, 362 (D.C.Cir.), certified question dismissed, 489 U.S. 1002 (1989), and other circuits have split on the subject. Compare, e.g., United States v. Valdes, 876 F.2d 1554, 1557-60 (11th Cir.1989) (holding that warrantless seizures are permitted under 881(b)(4) without proof of exigent circumstances or contemporaneity of seizure and events establishing probable cause to believe property has been used in violation of the federal drug laws), with United States v. Lasanta, Nos. 1521-23, slip op. 7355, 7360-62 (2d Cir. Oct. 21, 1992) (holding that warrant must be obtained for forfeiture seizure absent recognized Fourth Amendment exception).
 
 
 9
 We need not resolve the issue today, however, as the requirements for application of the procedure established in United States v. Hooper, 432 F.2d 604 (D.C.Cir.1970), are all satisfied. First, a criminal defendant has raised a legal issue on appeal that presents "a substantial question" and "a point not without difficulty." United States v. Dorsey, 865 F.2d 1275, 1280 (D.C.Cir.) (quoting Hooper, 432 F.2d at 605), cert. denied, 492 U.S. 924 (1989). Second, resolution of the issue would "require us to proceed beyond the place where controlling precedent leaves off." Dorsey, 865 F.2d at 1280. Finally, and obviously most important, the sentence for the conviction implicated by the appellate claim runs concurrently with and no longer than the sentence for a conviction that has been affirmed or unquestioned. See id. The disputed evidence was relevant only to Muslim's convictions under D.C.Code §§ 6-2311(a) and 6-2361(c) for possession of an unregistered firearm and ammunition. For those violations he received six-month sentences that will run concurrently with his 168-month term of imprisonment because of his federal narcotics violations.[2]
 
 
 10
 When these prerequisites are met, Hooper teaches that there is "no reason to devote our time and energies to the research[ ] and opinion-writing[ ] incident to appropriate determination of an issue not governed by controlling precedent when no present public interest or need is furthered thereby." 432 F.2d at 606. Accordingly, we vacate the six month terms of imprisonment on the D.C.Code violations. We also add the same caveat that Hooper and its progeny have:
 
 
 11
 The vacation of the judgment does not destroy the jury verdict, but is rather equivalent in practical effect to a suspension of the imposition of sentence. If it later develops that the interest of justice so requires, the sentence can be reimposed on a concurrent basis. The conviction could then be subject to appellate review.
 
 
 12
 Dorsey, 865 F.2d at 1281 n. 4 (quoting Hooper, 432 F.2d at 606 n. 8).[3]
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 Of the remaining challenges raised, only two merit substantial discussion.[4] First, Muslim alleges that the district court erred in denying a motion to suppress tangible evidence recovered from his residence. [Muslim Brief at 12.] More specifically, he argues that the warrant authorizing the search was not supported by facts giving probable cause to think that contraband or evidence would be found at the Muslim residence. [Id.]
 
 
 16
 The rules governing the validity of search warrants, at least to the extent necessary to resolve Muslim's claim, are clear. "To demonstrate probable cause to search premises, an affidavit [supporting a search warrant] must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." United States v. Laws, 808 F.2d 92, 94 (D.C.Cir.1986). An issuing magistrate's determination of probable cause must be upheld if, looking at the totality of the circumstances, "the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.' " Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). In addition, the magistrate's finding of substantial basis is entitled to "great deference." United States v. Leon, 468 U.S. 897, 914 (1984) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).
 
 
 17
 After reviewing the affidavit accompanying the search warrant, we conclude that the magistrate had a substantial basis for finding probable cause. First, the affidavit describes two controlled heroin purchases effected by undercover police officers on November 7, 1989 and December 1, 1989. See Affidavit at 10-13. Although the search warrant in this case was not issued until March 7, 1990, the short time gap between the purchases and the issuance of the warrant is not troubling. As Muslim concedes, these sorts of purchases are relevant to the probable cause analysis "in cases of drug trafficking" "where the alleged criminal activity has been ongoing" because "probable cause may in fact continue for months after the last reported criminal act." Muslim Brief at 16. See United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986).
 
 
 18
 Muslim also argues that because the two sales occurred at the M-Pac gym and not at Muslim's residence, they offered the magistrate no basis from which to conclude that evidence of the drug trafficking would be located at Muslim's home; therefore, Muslim asserts, the magistrate issued the warrant solely on the basis of generalized expert assertions that drug dealers often keep contraband at their homes.
 
 
 19
 In fact, expert assertion was needed only to firm up the link between Muslim's narcotics transactions and his residence. As the affidavit also relates, when these two purchases were effected, Muslim left the M-Pac gym to pick up the heroin in a white Nissan--the same Nissan registered to a Ms. Karin Muslim (who lived with Mr. Muslim), and the same Nissan Muslim kept at the residence which was searched. Affidavit at 12-13, 10, 16. In addition, the affidavit describes a conversation between Muslim and an undercover officer (Officer Scott) in which Muslim explained that he and Pasha were experienced and active large-scale narcotics dealers.
 
 
 20
 From these pieces of evidence--plus the insight provided in the affidavit from experienced narcotics investigators who related that homes of narcotics traffickers typically contain evidence of money laundering and drug distribution--the issuing magistrate could determine that "it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Malin, 908 F.2d 163, 166 (7th Cir.) (quoting United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985)), cert. denied, 111 S.Ct. 534 (1990). The issuing magistrate could reasonably conclude that Muslim was an active narcotics trafficker with operations proven to extend beyond his ostensible place of employment (M-Pac) and further that there was a basis to infer a link between Muslim's residence and the drug sales. Consideration of the expert testimony about the typical practices of drug traffickers as one element of the probable cause analysis is accepted in this circuit, see United States v. Laws, 808 F.2d 92, 103-04 (D.C.Cir.1986), and that testimony in conjunction with the other evidence in the affidavit furnished the issuing magistrate with "facts sufficient to induce a reasonably prudent person to believe that a search ... [of the premises in question would] uncover evidence of a crime." Id. at 94.
 
 
 21
 In his last challenge to the sufficiency of the affidavit, Muslim advances the desperate argument that "the affidavit fails to establish that the premises sought to be searched was Mr. Muslim's residence." Muslim Brief at 18. In truth, however, there was substantial evidence providing probable cause to think Muslim resided at the home. As the affidavit explains, Muslim co-owned the house in question with a woman of the same last name; he was seen leaving the house early one morning with two children; he was repeatedly seen driving a car registered to the co-owner; and he had no telephone listing anywhere while the phone at the house was listed in the name of his co-owner. Affidavit at 16-17. Such evidence afforded an ample basis for the conclusion that Muslim resided at the home.
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 Finally, appellant Muslim claims the district court erred at sentencing in finding him accountable for 1134.0 grams of heroin sales.[5] [Muslim Brief at 26.] That figure principally includes 10 to 14 ounces of heroin prepared and sold from December 1988 to February 1989 by Muslim's co-conspirators Larry Thompkins and Arthur Page. [3/6/91 Tr. at 32, 37.] Muslim argues that there is no evidence of his involvement in the conspiracy before November 1989 and that therefore he can be held responsible for no more than 141 grams of heroin, the total amount in the distribution charges filed against him. [Muslim Brief at 26-27.] After reviewing the record, we find Muslim's claim unpersuasive.
 
 
 25
 Under the Guidelines, the base level for an offense is determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, ... or that otherwise were in furtherance of that offense." U.S.S.G. § 1B1.3(a)(1) (emphasis added). Pursuant to the highlighted language, which refers to conspiracy liability, see id., comment (n. 1), a convicted conspirator is responsible for the conduct of his co-conspirators unless: (1) their conduct falls outside the scope of the defendant's agreement; (2) their conduct is not in furtherance of the jointly-undertaken criminal activity; or (3) their conduct was not reasonably foreseeable in connection with the criminal activity the defendant agreed to take. See U.S.S.G. § 1B1.3 & comment (n. 1).
 
 
 26
 The district judge understood these principles and applied them to the evidence presented at trial. On the basis of that evidence, he concluded that Muslim was a member of the heroin conspiracy during the sales of the 1134.0 grams of heroin and also that the transactions were foreseeable to Muslim. [5/29/91 Tr. at 25.] We review only to ensure that those factual findings are supported by a preponderance of the evidence, see United States v. Burke, 888 F.2d 862, 869 (D.C.Cir.1989), and will not disturb the district court's findings unless they are clearly erroneous. See United States v. Young, 932 F.2d 1510, 1512 (D.C.Cir.1991).
 
 
 27
 The evidence in the record sufficiently supports the trial judge's findings. Thompkins testified that Muslim was distributing drugs with Pasha as far back as 1983 when Muslim and Pasha were smuggling drugs to inmates at the Lorton Correctional Facility. Tr. 3/5/91 at 177-79. Although that testimony alone would not support a finding that Muslim was involved in the conspirators' heroin operations during late 1988 and early 1989, there was plenty of other evidence indicating that Muslim was involved during that time.
 
 
 28
 For example, Thompkins testified that between September 1988 and early February 1989 he went with Page to pick up a bag of heroin at the gym operated by Pasha and Muslim, the M-Pac Gym. 3/6/91 Tr. at 36. In addition, in a September 27, 1989 conversation with Thompkins and Officer Scott (an undercover police officer), Muslim and Pasha related that Muslim had accumulated a $6,500 debt with a drug supplier. 3/7/92 Tr. at 62-63. Later, in a conversation with Officer Scott taped on December 8, 1989, Muslim made clear that he and Pasha had established a sophisticated, high-volume, narcotics operation with well-settled business practices. 3/11/92 Tr. at 38-41; 3/20/91 Tr. at 19-21, 29.
 
 
 29
 Looking at this evidence, we cannot say that it was clearly erroneous to conclude that Muslim was probably part of the conspiracy during November 1988 to February 1989. Nor was it clear error to find that the heroin sales in question were foreseeable to Muslim, a man who described his involvement in a well-oiled, high-volume, narcotics operation during his taped conversation with Officer Scott. 3/11/92 Tr. at 38-41; 3/20/91 Tr. at 19-21, 29. As a consequence, we refuse to disturb the trial judge's findings regarding Muslim's likely involvement in the conspiracy from November 1988 to February 1989; a fortiori, we also affirm the judge's determination of Muslim's base offense level for the heroin trafficking.
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 For the reasons stated above, appellant Muslim's convictions for violations of D.C.Code §§ 6-2311(a) and 6-2361(c) are vacated. The judgment of the district court is affirmed in all other respects.
 
 
 
 [1]
 21 U.S.C. § 881(b)(4) states in relevant part:
 (b) Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when ... (4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.
 
 
 [2]
 The Government's Supplemental Memorandum submitted after argument indicates that no special assessment was imposed for the D.C.Code violations
 
 
 [3]
 Because we vacate Muslim's convictions that resulted from the search of his car, it is unnecessary to address Muslim's alternative claim--that the car search was improper because a warrantless seizure, even if permissible under 21 U.S.C. § 881(b)(4), must occur within a short time after the occurrence giving probable cause to seize the property
 
 
 [4]
 Appellant Muslim's primary claim--that the trial court improperly curtailed cross-examination concerning an alleged "secret deal" between the government and witness Thompkins--is meritless. The trial judge allowed extensive cross-examination concerning agreements between the government and Thompkins and further cross-examination would have been cumulative
 
 
 [5]
 That amount of heroin generated a base offense level of 32 under the Sentencing Guidelines. See U.S.S.G. § 2D1.1(a)(3)