UNITED STATES of America, Appellee,

v.

Albert G. LINDSEY, Appellant.

UNITED STATES of America, Appellee,

v.

Arthur W. ROBINSON, Appellant.

Nos. 90–3173, 90–3191.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1995.

Decided Feb. 14, 1995.

Jensen E. Barber, appointed by this Court, Washington, DC, argued the cause and filed the briefs, for appellant Arthur W. Robinson.

Albert G. Lindsey filed briefs, pro se.

James W. Cooper, Asst. U.S. Atty., Washington, DC, argued, for appellee pro hac vice in No. 90–3191. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher and Daniel M. Zachem, Asst. U.S. Attys., Washington, DC.

Before EDWARDS, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Albert G. Lindsey and Arthur W. Robinson appeal from their convictions in the United States District Court for the District of Columbia for possession with intent to distribute crack cocaine, simple possession of marijuana, and use of a firearm during and in connection with a drug trafficking offense.[1] We remand to the district court with instructions to vacate one of each appellant's two convictions under 18 U.S.C. § 924(c)(1), for use of a firearm during and in connection with a drug trafficking crime. In all other respects, we affirm.

## I. BACKGROUND

Responding to complaints from a neighboring tenant that someone was using an apartment that should have been vacant, building management personnel entered the supposedly vacant unit, Apartment 202 at 4287 Sixth Street, Southeast, Washington, D.C., and discovered lawn chairs and stacks of cash. The building personnel called the Metropolitan Police Department. Police officers covered the rear windows while other officers knocked on the door, announced their presence, then entered the apartment, where they arrested appellants Lindsey and Robinson. From inside the apartment, the police recovered loose and packaged rocks of crack cocaine, marijuana, a gym bag containing two handguns and ammunition, $2,589 in cash, and drug processing paraphernalia including ziplock bags, a bag sealer, a triple beam

---

1. Appellant Lindsey filed his briefs *pro se* in No. 90–3173, and that case was decided on the briefs as submitted.

scale, a coffee pot containing cocaine residue, an electronic beeper, and baking soda. The police also recovered a plastic vial containing crack cocaine from the ground outside the apartment, which an officer had observed being thrown from the apartment by a person he identified as Lindsey. They also found a smaller amount of crack cocaine on Lindsey's person. The only furniture in the apartment was lawn chairs and "old, beat-up" stereo components. Officers found no clothing or other evidence that anyone was living in the apartment. Police found a key to the apartment in a set of keys on Robinson's person, and another key to the apartment in a set of keys on the kitchen counter.

## II. ANALYSIS

### A. *Speedy Trial*

■■■ Appellant Lindsey contends that his Sixth Amendment right to a speedy trial was violated because his trial did not commence until sixteen months after his arrest. Assuming *arguendo* that Lindsey preserved his Sixth Amendment speedy trial claim,[2] that claim is without merit. Although a sixteen-month delay before trial is not extraordinary, any delay of a year or more triggers our scrutiny. *Doggett v. United States,* —— U.S. ——, —— n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992); *United States v. Jones,* 524 F.2d 834, 849 (D.C.Cir.1975). Under *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), we use a multi-factor balancing test to review a speedy trial claim, weighing the length of delay, reasons for the delay, the extent to which the defendant pressed his right in the trial court, and prejudice resulting from the delay. Here, the delay was not severe, and any delay beyond twelve months is attributable to defendants' own pretrial motions to suppress evidence and to dismiss on constitutional and other grounds, as well as to the unavailability of defendants' counsel for earlier trial dates, for which the government cannot be faulted. Lindsey did not press his

Sixth Amendment speedy trial right in the trial court. Finally, Lindsey was not substantially prejudiced by the delay. Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," including "prevent[ing] oppressive pretrial incarceration," "minimiz[ing] anxiety and concern of the accused," and "limit[ing] the possibility that the defense will be impaired" by dimming memories and loss of exculpatory evidence. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Here, Lindsey was not incarcerated prior to trial. Nor did the delay in any way impair his ability to prepare his defense by, for example, making witnesses unavailable, causing witnesses' recollections to be diminished, or causing evidence to be lost or destroyed with the passage of time. *Cf. Doggett,* —— U.S. at ——, 112 S.Ct. at 2692 (of these three forms of prejudice, impairment of defense is "the most serious" for purposes of *Barker* analysis). Even without incarceration, of course, an accused person will always be "disadvantaged by ... living under a cloud of anxiety, suspicion, and often hostility." *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. But this factor alone is neither "necessary [n]or sufficient ... to the finding of a deprivation of the right of speedy trial"; it "must be considered together with such other circumstances as may be relevant." *Id.* Here, the short delay could have caused only a relatively small additional increment of anxiety and concern. More importantly, because the appellants caused the delay, they must also shoulder responsibility for the accompanying lengthened period of anxiety and concern. Thus, the *Barker* factors, considered together, do not support Lindsey's claim that he was deprived of his right to a speedy trial. *Cf. Barker,* 407 U.S. at 534–35, 92 S.Ct. at 2194 (delay of five years permissible where defendant did not actively press speedy trial claim at trial; "living for over four years under a cloud of suspicion and anxiety" resulted in "minimal" prejudice).

**2.** Although the government argues that Lindsey failed to raise his Sixth Amendment claim below, the record is inconclusive on this point. Lindsey's attorney moved to join a "filing" by co-defendant Robinson, and although the record is unclear as to exactly which "filing" Lindsey joined, it could have been Robinson's earlier motion to dismiss on speedy trial grounds, which mentioned both the Speedy Trial Act and the Sixth Amendment.

## B. *Double Jeopardy*

■ Lindsey contends that because he was first indicted in the District of Columbia Superior Court, and later indicted and prosecuted for the same offense in the United States District Court, he suffered double jeopardy. Since Lindsey's District of Columbia case was dismissed before a jury was empaneled and sworn, however, jeopardy never attached in the first proceeding. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977). Two indictments for the same offense may be outstanding at the same time if jeopardy has not attached, and a court may dismiss either indictment before the jury is sworn without offending double jeopardy principles. *United States v. Del Vecchio*, 707 F.2d 1214, 1216 (11th Cir.1983).

■ Lindsey nonetheless argues that because Judge Queen of the District of Columbia Superior Court dismissed the case against him "with prejudice," he could not be prosecuted for the same offense in the district court. This contention is without merit. Dismissal of an indictment before trial, with or without prejudice, does not itself invoke jeopardy where it does not involve a determination of the underlying facts. *United States v. Stricklin*, 591 F.2d 1112, 1120 (5th Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). Nor was the dismissal here the equivalent of an acquittal. Although in civil suits, dismissal "with prejudice" is said to operate as an adjudication on the merits, is entitled to *res judicata* effect, and thus bars further litigation between the parties on the same cause of action, 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2364 (1995), for double jeopardy purposes a dismissal is an acquittal "only when the ruling of the judge, whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged," *United States v. Scott*, 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978) (internal citation and quotation omitted). Here the dismissal "with prejudice" was not in any sense a determination of Lindsey's factual guilt or innocence. Judge Queen herself indicated that the dismissal was intended merely to yield jurisdiction to the federal district court, and she certainly had no power to dismiss the separate indictment then pending in the United States District Court. Understood in its proper context, then, Judge Queen's dismissal "with prejudice" merely operated to bar reprosecution in the District of Columbia courts, was not an acquittal, and therefore did not bar the then-pending prosecution in federal district court on double jeopardy grounds.

## C. *Sufficiency of Evidence*

■ Robinson contends the evidence was insufficient to sustain his convictions for possession with intent to distribute crack cocaine and simple possession of marijuana. Lindsey and Robinson contend the evidence was insufficient to sustain their convictions for use of a firearm during and in connection with a drug trafficking offense. In reviewing these claims, we must consider the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), recognizing that a "jury is entitled to draw a vast range of reasonable inferences from [the] evidence," *United States v. Long*, 905 F.2d 1572, 1576 (D.C.Cir.), *cert. denied*, 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990). We grant "the government the benefit of all reasonable inferences that may be drawn from the evidence," *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C.Cir.1986), and we will affirm if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ Appellants argue that they could not rationally have been found to be in possession of the drugs and guns when they were arrested. Possession may be actual or constructive, joint or individual, and may be inferred from direct or circumstantial evidence. *United States v. Raper*, 676 F.2d 841, 847 (D.C.Cir.1982); *United States v. Joseph*, 892 F.2d 118, 125 (D.C.Cir.1989). Mere proximity to drugs or guns is, of course, not sufficient to establish possession, and constructive possession "requires that the defen-

dant knew of, and was in a position to exercise dominion and control over, the contraband." *United States v. Byfield,* 928 F.2d 1163, 1166 (D.C.Cir.1991). "The essential question is whether there is 'some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them.'" *Id.* (quoting *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980)). Here, appellants were found alone inside an otherwise-vacant apartment, with no signs that anyone was living there or using the apartment for any purpose other than as a drug processing and distribution center. Apart from some lawn chairs, a stereo, and some rubbish, the only contents of the apartment at the time of their arrest were large quantities of cocaine, smaller quantities of marijuana, cash, drug trafficking paraphernalia, and two firearms with ammunition. Some of these items were in plain view, and all were accessible to the appellants. Robinson had a key to the apartment on a set of keys in his pocket, and another key was on a set of keys on the kitchen counter in plain view. A police officer observed Lindsey throwing a plastic vial found to contain crack cocaine from the bedroom window, and the police discovered crack cocaine on his person at the time of the arrest, specifically linking him to the drugs found in the apartment. From all this, a jury may reasonably infer that both Lindsey and Robinson had constructive possession of the drugs. Beyond mere proximity, appellants were concretely linked to the contraband, in Lindsey's case through actual possession of part of the contraband, and in Robinson's case through actual possession of a key to an apartment being used solely for the purpose of drug trafficking. With the apartment containing almost nothing else but the contraband, some of it in plain view, the jury could reasonably infer that appellants knew of, and were "in a position to exercise dominion and control" over the drugs and guns, *Byfield,* 928 F.2d at 1166.

Appellants rely upon *United States v. Zeigler,* 994 F.2d 845 (D.C.Cir.1993), where the appellant was arrested inside another person's *occupied* residence, and charged with possession of cocaine and weapons found *locked* in a briefcase in a locked laundry room. Under those circumstances, we said there was not sufficient evidence of appellant's knowledge or "dominion and control" over the drugs and guns to sustain an inference of constructive possession. *Zeigler,* 994 F.2d at 848. Here, by contrast, there was no evidence that any intermediary party occupied the apartment, except for Lindsey's uncorroborated testimony—which the jury was not required to believe—that he was only in the apartment "to fix a stereo" for a friend, that "someone named Juan" had let him in but escaped during the arrest, and that he had never been in the kitchen where the drug paraphernalia, guns, and most of the drugs were located. Thus the jury could reasonably infer that Lindsey and Robinson were the occupants of the apartment for purposes of its obvious (and unauthorized) use as a drug trafficking center, and it is reasonable to infer that the occupant of an apartment exercises constructive possession over its contents. *See United States v. Morris,* 977 F.2d 617, 620 (D.C.Cir.1992). Moreover, because in *Zeigler* the apartment was filled with another person's possessions, the jury could not reasonably infer that the contraband belonged to the appellant rather than the person who concededly possessed other personal property found there. 994 F.2d at 848. Here, by contrast, there was virtually nothing in the apartment except items related to the drug trafficking business, and the jury could reasonably infer that these items belonged to appellants. Finally, in *Zeigler,* the drugs were locked away and apparently inaccessible to the appellant. 994 F.2d at 848. Here, however, the drugs and guns were readily accessible to Lindsey and Robinson. Although accessibility alone does not give rise to an inference of possession, *id.,* here accessibility was combined with appellants' apparent occupancy of an obvious drug processing center. Under the circumstances, the jury could reasonably infer that the drugs and guns were under appellants' "dominion and control."

■ Intent to distribute may be inferred from the presence of large amounts of cash, drug processing and packaging paraphernalia, large quantities of drugs already packaged for street sale, and guns, especially

when, as here, this evidence is bolstered by expert testimony as to the use of these items in the drug trade. *Morris,* 977 F.2d at 620.

■■■■■ Appellants also challenge the sufficiency of the evidence of their "use" of firearms during and in connection with a drug trafficking offense under 18 U.S.C. § 924(c)(1). Under *United States v. Bailey,* 36 F.3d 106 (D.C.Cir.1994) (*in banc* ), we use a two-pronged test to determine whether the evidence is sufficient to establish "use" of a firearm during and in connection with a drug offense: (1) proximity, and (2) accessibility. Specifically, "the government need only point to evidence that the firearm in question was *in proximity* to the drugs, drug paraphernalia, or drug proceeds and was *accessible* to the defendant from the site of the drugs, drug paraphernalia, or drug proceeds involved in his or her predicate drug trafficking offense." *Bailey,* 36 F.3d at 118 (emphasis added). Here, two guns and ammunition were found in a gym bag in an unlocked kitchen cabinet, within a few feet of both unpackaged and packaged drugs, stacks of money, and drug processing and packaging paraphernalia. The entire drug processing operation was centered in the kitchen. The firearms were clearly in close "proximity" to the drugs, paraphernalia, and proceeds. And because the firearms were in an unlocked kitchen cabinet, they were clearly "accessible" to appellants from the site of the drugs, paraphernalia, and proceeds. As in *Bailey* itself, having thus established both proximity and accessibility, "[t]he jury could reasonably infer that [each appellant] had intentionally incorporated the gun into his drug operation, was using it as part of that operation, and was therefore using it in relation to his possession with intent to distribute the drugs," 36 F.3d at 117. Under *Bailey,* the evidence is sufficient to support appellants' convictions.

D. *Multiple Convictions for Use of a Firearm*

■■■ On the basis of the two handguns present at the site of their drug trafficking operation, Lindsey and Robinson were both convicted of two counts of use of a firearm during and in relation to a drug trafficking

offense under 18 U.S.C. § 924(c)(1), with the sentence for the second firearms conviction to be served concurrently with the first. Under the statute, "[w]hoever, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm . . ." may be convicted of a separate criminal offense. 18 U.S.C. § 924(c)(1). In *United States v. Anderson,* 39 F.3d 331, 356 (D.C.Cir.1994), a panel of this court specifically declined to reach the question whether "more than one gun . . . used to protect a stash of drugs in a single location" can support multiple § 924(c)(1) convictions. This is precisely such a case. We think it unnecessary to reach the merits of that question under the circumstances of this case, however. Because each appellant's second sentence is to be served concurrently with the first, there is no pressing public interest in retaining the second conviction and sentence, and considerations of judicial economy weigh against our attempting to resolve the substantial question at hand, which is not governed by controlling precedent and which has not been briefed by the parties to this dispute. We therefore turn to the doctrine first announced in *United States v. Hooper,* 432 F.2d 604 (D.C.Cir.1970), whereby in similar circumstances we have vacated the second conviction and sentence without deciding the merits, *see, e.g., United States v. Sayan,* 968 F.2d 55, 61 (D.C.Cir.1992); *United States v. Wood,* 879 F.2d 927, 937 (D.C.Cir.1989); *United States v. Dorsey,* 865 F.2d 1275, 1280 (D.C.Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 603 (1989). Here, as in *Hooper* and its progeny, there is "no reason to devote our time and energies to the research, and opinion-writing, incident to appropriate determination of an issue not governed by controlling precedent when no present public interest or need is furthered thereby," *Hooper,* 432 F.2d at 606. Accordingly, without resolving the merits, we remand to the district court with instructions to vacate, in the case of each appellant, one conviction for violation of 18 U.S.C. § 924(c)(1). We note finally that the government does not oppose our decision to remand with instructions to vacate the second conviction and sentence, *see* Government's Brief at 34–35 n. 18, lending further support to our

view that this disposition "does not impair any need of the government, avoids the possibility of adverse collateral consequences to defendant, and furthers the general interest of the administration of justice," *Hooper,* 432 F.2d at 606.

In all other respects, the judgments and sentences of the district court are affirmed.

*It is so ordered.*